UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Cause No. 2:21-cv-16 |
| $399,820.00 in U.S. Currency, ) | |
| ) | |
| Defendant. ) | |

## VERIFIED COMPLAINT IN REM

Plaintiff, United States of America, by its attorneys, Gary T. Bell, Acting United States Attorney for the Northern District of Indiana, and Kathleen Trzyna, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America, pursuant to 21 U.S.C. § 881(a)(6), U.S. Currency in the amount $399,820.00 (hereinafter referred to as "defendant property").

### THE DEFENDANT IN REM

2. Defendant property was seized on July 16, 2020, from Wor Ching

Yu, Dan Ling Zeng, Jiamin Huang, and Peng Li, in Porter County, Indiana. Defendant property is in the custody of the United States Marshal's Service in South Bend, Indiana.

## JURISDICTION AND VENUE

3. Plaintiff brings this action <u>in rem</u> in its own right to forfeit and condemn the defendant properties. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has both *in rem* and subject matter jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1395(b), because the defendant property was found within this district.

## BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), because it constitutes money furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act.

## FACTS

7. On July 16, 2020, a law enforcement officer conducted a traffic stop for a traffic violation on westbound Interstate 90 near mile marker 29 in Porter County, Indiana. The vehicle was a rental, and the driver, Wor

Ching Yu, presented a New York driver's license. The officer informed Yu of the reason for the traffic stop and asked the driver to step out and have a seat in his vehicle while he checked his information. In response to questioning by the officer, the driver gave information about the reason for his trip to Chicago.

8. The officer left the police vehicle and made contact with the front seat passenger, Dan Ling Zeng, and asked for the vehicle's rental agreement. While Zeng looked for the rental agreement, the officer engaged her in conversation. Zeng provided inconsistent information regarding the purpose of the trip to Chicago than that of the driver.

9. The rental agreement identified the vehicle as being rented at Newark Airport for a period of three days, with the return to be in San Francisco, California.

10. The driver denied the presence of drugs, guns, or large amounts of money in the vehicle. The driver then consented to the search of the vehicle. The officer asked the driver about the items in the vehicle, and the driver identified which items belonged to which passengers in the vehicle. At that time, the officer informed the driver that he wanted to ask each passenger for permission to search their items as well.

11. The officer spoke to Zeng, who stated that she had one bag. Zeng opened the bag and showed the contents to the officer. The officer

observed a clear plastic bag containing several bundles of United States Currency. The officer then informed Zeng that he would search the rear cargo area of the vehicle.

12. The officer decided to conduct a free-air sniff with his K-9 and asked the passengers to exit the vehicle. As Peng Li was exiting the vehicle, the officer observed a green jacket with large amounts of U.S. Currency hanging out of the pocket. The officer inquired about the ownership of the jacket and was told inconsistent stories.

13. The officer had his drug detecting canine conduct a free-air sniff around the perimeter of the vehicle, and the canine alerted positively to the presence of odor for narcotics. The officer then conducted a probable cause search of the vehicle.

14. During the search, an officer opened a Styrofoam cooler that contained live lobsters. The officer then observed vacuum sealed bags inside the box containing the live lobsters. The vacuum sealed bags contained U.S. Currency.

15. The officers searched the second Styrofoam cooler, which contained unknown fruit as well as additional vacuum sealed packages containing U.S. Currency.

16. The officers also found, inside a suitcase, more bundles of U.S. Currency, and additional large sums of U.S. Currency inside pillowcases

that were inside of another suitcase. A further inspection of the green jacket revealed that U.S. Currency was hidden inside the liner of the jacket.

17. Officers discussed the findings with Yu and the vehicle passengers. Yu denied any knowledge or ownership. Zeng stated that she packed the money in the Styrofoam cooler and that it belonged to her boss, whom she would not identify and refused to answer any questions about. Huang utilized a translation app to speak to officers and agreed to translate for Li. Both denied any knowledge of the U.S. Currency.

18. The in-car audio/video recording during the time in which Li and Huang were inside the police vehicle was later reviewed and translated from the original Cantonese, Taishanese, and Mandarin languages. The recording contains conversations between the occupants regarding how they should respond when the police ask them who the money belongs to and where they are going. The recording also contains a conversation in which the occupants discussed their history with transporting money and not being inspected. At one point in the recording, Li listened to a voice message and discussed the need to inform the other two occupants of the need to obtain their cell phones and delete the related records.

19. Following seizure of the currency, a controlled canine sniff was conducted at the Lake Count Police Department by a second drug

detecting canine, who alerted to the presence of narcotics on the seized currency.

20. The final count of the seized currency was $399,820.00.

WHEREFORE, the plaintiff requests that the defendant property be forfeited and condemned to the United States of America; that Warrant of Arrest In Rem be issued for defendant properties; that the plaintiff be awarded its costs and disbursements in this action; and for such other relief this court deems proper and just.

Respectfully submitted,

Gary T. Bell
ACTING UNITED STATES ATTORNEY

By: /S/ Kathleen Trzyna
Kathleen Trzyna
Assistant U.S. Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219)937-5515; fax: 219-852-2770
Kathleen.trzyna@usdoj.gov

## VERIFICATION

I, Robert Franko, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration (DEA); that I have read the foregoing Verified Complaint In Rem and know the contents thereof; and that the matters contained in the Verified Complaint are true to the best of my knowledge.

The sources of my knowledge and information are the official files and records of the DEA, along with information supplied to me by other law enforcement officers, as well as my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

Dated: 01/13/2021

Robert Franko
Task Force Officer, DEA